**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**PEGGY PEDIGO,**

       **Plaintiff,**

**vs.**                                                                                                 **No.  06cv0268 DJS**

**JOANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's (Pedigo's) Motion to Reverse Administrative Agency Decision or, in the Alternative, a Remand of Said Decision **[Doc. No. 12]**, filed September 13, 2006, and fully briefed on November 15, 2006.  On November 17, 2005, the Commissioner of Social Security issued a final decision denying Pedigo's claim for disability insurance benefits and supplemental security income.  Pedigo seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds that the motion to remand is not well taken and will be DENIED.

## I.  Factual and Procedural Background

Pedigo, now thirty-four years old (D.O.B. May13, 1972), filed her application for disability insurance benefits and supplemental security income on January 9, 2002 (Tr. 67,255), alleging disability since April1, 2001 (Tr. 67), due to neck and back pain and depression (Tr. 131).  Pedigo has at least a high school education and five years of college education (Tr. 93, 161,

181) and past relevant work as a laborer and cashier (Tr. 88). On November 17, 2005, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding Pedigo was not disabled as she retained "the residual functional capacity (RFC) compatible with the performance of at least 'light' work." Tr. 17. Moreover, the ALJ found Pedigo's testimony regarding her limitations as not credible. Tr. 17-18. Pedigo filed a Request for Review of the decision by the Appeals Council. On February 23, 2006, the Appeals Council denied Pedigo's request for review of the ALJ's decision. Tr. 6. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Pedigo seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. *Hamilton v. Secretary of Health and Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative

evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to

the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse and remand, Pedigo makes the following arguments: (1) the ALJ erred in evaluating her pain; (2) the ALJ's credibility determination is not supported by substantial evidence; (3) the ALJ erred when he relied on chiropractic evidence to find she retained the RFC to perform light work; (4) the ALJ failed to develop the record; (5) the ALJ erred in giving weight to a non-treating expert opinion; and (6) the ALJ's RFC determination is not supported by substantial evidence.

## A.  Medical Records

On June 8, 2001, Jennifer Postlewaite, M.D., evaluated Pedigo at the Emergency Department of Wilson Memorial Hospital, Sidney Ohio.  Tr. 155.  Pedigo's chief complaint was "neck pain."  *Id.*  The x-rays of the spine indicated "no evidence of acute fracture or dislocation" and "suggestion of muscle spasm."  Tr. 157.  Dr. Postlewaite noted:

> **Subjective Findings**:
> History of Present Illness:  A 29-year old with some stiffness of her neck, worse in the morning.  Not improving over the last three days.  It hurts to move her head in all range of motion, especially with anterior flexion.  Denies fever, other stiffness in joints.  No specific injury.  She feels like it is spasming.  Has never had anything like this before.  Denies associated neurological complaints.  Nursing notes reviewed.
> **Objective Findings**:
> Vital Signs:  Temp: 96.4.  Pulse: 90.  Resp: 20.  BP: 149/68.
> Ambulatory, pleasant female.  Cooperative.  She is holding her head straight forward but she can move her head in limited range of motion.  She does not appear particularly uncomfortable.  Head is unremarkable.  Neck:  She has marked cervical spasm of the right paracervical muscles in the region of C2, C3, and C4.  She has also some tenderness of the superior trapezius muscles bilaterally.  She states she has been shrugging her shoulders up to prevent the strain on her neck.  She has limited anterior flexion and extension.  Lateral rotation is approximately 50% of normal.  Distal neurovascular is intact.
>
> Diagnostic Studies:  X-rays of the cervical spine with flexion/extension shows decreased lordosis of the cervical spine, decreased anterior flexion with no malalignment of the vertebrae during flexion/extension, reviewed by myself.

> Differential Diagnosis:  A 29-year-old female with neck pain.  Differential includes cervical spasm, cervical subluxation, ligamentous injury, meningeal symptoms, strain.
> **Final Diagnosis**:  Cervical spasm.
> Disposition/Discharge Condition:  Stable.
> Plan and Instructions:  Prescription Skelaxin, over-the-counter Motrin.  Continue her stretching exercises.  Return to work next scheduled shift.

Tr. 155-56.

On March 6, 2003, Michael R. Compton, D.C. (chiropractor in Sidney, Ohio) submitted the following letter:

> Ms. Pedigo has been treated by me since 5/01/2002.  Her chief complaint was low back pain and stiffness.  An examination was performed and reveled (sic) the following:  active range of motion of the lumbar spine was mildly decreased.  The patient complained of stiffness while performing the movements.  Yoman's test, Milgram's test, and Faber test were all positive producing moderate pain.  Previous x-rays were taken prior to being treated by me.  The x-rays reveled (sic) a slight lumbosacral facet syndrome with minimal arthritic changes.  Ms. Pedigo has stated that at times her back is so bad that she can't work.  Based on my objective findings, I would recommend Ms. Pedigo to work with the following restrictions:  No lifting more than 30 lbs.  Avoid repetitious bending and stooping.  No restrictions walking, sitting, or driving.

Tr. 158.  Dr. Compton also completed a form the Social Security Administration provided.  Tr. 159-60.  Dr. Compton opined Pedigo's "pain was tolerable with treatment."  Tr. 159.  Dr. Compton noted the results of Pedigo's x-rays: cervical: mild degeneration hypolordosis; lumbar: facet syndrome.  *Id.*  Dr. Compton noted he had treated Pedigo from May 1, 2002 to January 27, 2003.  Tr. 160.  Dr. Compton opined as follows:

> The patient is able to hold a job consisting of secretarial work, office work, or any job where repetitive lifting is not required.  The patient has no limitations on walking, standing or sitting. the mental activities of the patient appear to be normal.

*Id.*

On March 12, 2003, Pedigo went to Rehab Med Associates, Inc. in Troy, Ohio for a disability determination at the request of the Ohio Bureau of Disability determination.  Tr. 161-166.  Stephen W. Duritsch, M.D. evaluated Pedigo and noted in part:

**MUSCOSKELETAL PHYSICAL EXAMINATION:** The claimant is able to walk easily and freely from the waiting area. She is able to walk on her heels and toes with 5/5 strength. No gait abnormalities are appreciated. No assistive device is being used and none is required.

There is no evidence of any joint abnormalities including thickening, swelling, deformities or instability. There is diffuse myofascial tenderness and tightness in the cervical, thoracic and lumbar paraspinals.

There is no evidence of any focal weakness or manual muscle testing. Manual muscle testing has been entered into the table. There is no atrophy.

Sensation is intact to light touch in the bilateral lower limbs. There is decreased sensation in the right distal thumb and index finger. Tinel's sign is positive at the right wrist and negative at the left wrist. Thumb abduction is 4/5 and 5/5 on the left, so there is an asymmetry. Deep tendon reflexes are 1+ and symmetrical. Proprioception is normal. Romberg sign is negative.

The claimant has the normal ability to grasp and manipulate with each hand. She is right hand dominant. The claimant is 67 inches tall and weighs 225 pounds.

**MEDICAL DECISION MAKING**:
**CLINICAL ASSESSMENT/IMPRESSION:**
1. Chronic cervical, thoracic and lumbosacral strain
2. Probable right carpal tunnel syndrome

**DISCUSSION**:
I evaluated the patient from a musculoskeletal standpoint today. She has clinical exam findings consistent with mild carpal tunnel syndrom. She has minimal subjective symptoms and denies any numbness, tingling, or difficulty manipulating objects. There is no evidence of cervical, thoracic or lumbosacral radiculopathy or myelopathy. There is no evidence of any upper neuron signs.

She has been treated with Paxil. Her affect was extremely flat. She kept emphasizing how much she was crying. I told her today that I was not evaluating her from a psychological standpoint and if necessary, that will be done for BDD by another practitioner.

Based on the musculoskeletal and neurological findings on examination today, the claimant has no limits in her ability for sitting. Standing and walking can be done frequently. she can lift up to 30 pounds occasionally and 20 pounds frequently. She should not do continuous lifting or carrying. She can carry what she can lift. With respect to finger, feeling and manipulation, these can be done frequently on the right and continuously on the left. She should not do continuous activity with her right hand due to her current carpal tunnel syndrome. There are no environmental restrictions and there are no visual or communication limitations. In short, this claimant would do well in a job in which she is able to proceed at her own pace and does not do any continuous lifting, handling, bending, or twisting. These restrictions are based on the musculoskeletal and neurological limitations alone.

6

Tr. 162.  Dr. Duritsch also completed a neuromusculoskeletal data sheet.  Tr. 163-166.  All the values were normal for range of motion.  Tr. 165-166.  The muscle testing was also normal with no muscle spasms noted, no spasticity, clonus, or primitive reflexes present, and no muscle atrophy noted.  Tr. 164.

On March 12, 2003, Dr. Duritsch ordered x-rays of the cervical and thoracic spine. Tr. 167-168.  The cervical spine series with obliques indicated a normal cervical spine.   The thoracic spine series indicated a normal thoracic spine.

On April 8, 2003, Pedigo went to Kimberly Martin, M.D., with complaints of increased stress for the past six weeks.  Tr. 169-170.  Dr. Martin assessed Pedigo with depression and prescribed Paxil CR 25 mg one daily.

On March 11, 2005, Karen Balkman, M.D., a Pain and Spine Specialist, evaluated Pedigo. Tr. 232-234.  Pedigo reported "difficulties taking a lot of medications" and claimed "that even taking two Tylenol will put her out."  Tr. 232.  Pedigo described her pain as occurring all the time, mainly in her neck, in the mid back, and the trunk with limited radiation into the arms and legs with weakness.  The physical examination was normal except for limited ROM, tenderness to palpation over the C3-4 paracervical region bilaterally, muscle guarding through the trapezius, and tenderness to palpation over the L4-5 paralumbar region on the right.  Tr. 233.  The neurological examination was negative, motor strength was 5/5 and normal, and there was no evidence of radiculitis.  Dr. Balkman ordered x-rays, an EMG and nerve conduction study of the upper extremity to assess for nerve root injury or entrapment.  Tr. 234.  Dr. Balkman also considered physical therapy and an MRI.  Dr. Balkman prescribed a trial of Advil, topical ice applications, and a gentle home stretch program to begin conditioning.

On March 14, 2005, Pedigo had an x-ray of the cervical and lumbar spine. Tr. 239. The results indicate a normal lumbar series and a normal cervical spine. *Id.*

On April 8, 2005, Dr. Balkman evaluated Pedigo for neck and lower back pain. Tr. 235-236. On this day, Pedigo reported having low tolerance for medications claiming "even Tylenol will knock her out." Tr. 235. The physical examination indicated "significant tenderness to palpation" over the C3-4 region and "minimally over the lesser occipital and greater over the greater occipital and some guarding throughout the trapezius as well as the levator scapulae." *Id.* Dr. Balkman noted Pedigo's gait was nonantalgic, had full range of motion, and a suggestion of tenderness and stiffness throughout the entire mid back. Dr. Balkman assessed Pedigo with cervicothoracic lumbar strain with "no clear etiology on the workup done thus far." *Id.* Dr. Balkman recommended an EMG and nerve conduction study. Dr. Balkman also recommended medial branch blocks over the cervical facets. Dr. Balkman prescribed topical ice applications, a TENS unit, and Tylenol or Advil "around the clock."

On April 27, 2005, Dr. Balkman performed medial branch blocks over C3, C4 bilaterally. Tr. 238. Dr. Balkman's preoperative diagnoses were "cervical facet arthrosis, muscle spasms, and stiffness." *Id.*

On May 17, 2005, R.E. Pennington, M.D., evaluated Pedigo at the request of Alan Jakins, M.D. Tr. 242-243. Dr. Pennington reported in part:

> Electrodiagnostic testing was performed on both upper extremities. Nerve conduction studies were performed on the median, ulna, and radial nerves. The nerve conduction velocities, the motor and sensory distal latencies and amplitudes were within normal limits.
> Electromyographic examination (EMG) was performed on both upper extremities for the muscles supplied via the brachial plexus by nerve roots C5 through T1. The muscles most notably in the paraspinals over the C3-4 distribution revealed increased insertional activity combined with increased motor unit responses. All other muscles examined revealed normal

8

>motor unit potentials, normal recruitment pattern, normal interference pattern, and electrical silence at rest.
>**IMPRESSION**: This examination is consistent with muscle spasms in the paraspinals combined with increased insertional activities supportive of zygapophyseal or posterior element involvement.

Tr. 242.

On May 20, 2005, Pedigo returned to see Dr. Balkman for neck and lower back pain. Tr. 240-241. Pedigo reported taking Tylenol as needed and claimed "she [was] quite sensitive to medications and leery of taking much of anything else that will 'knock her out.'" Tr. 240. Pedigo also reported the recent medial branch blocks did not fully relief her symptoms although she felt some increase in the ability to relax the neck. The physical examination revealed some tenderness to palpation bilaterally over the greater occipital nerve root region, more on the right, over the cervical facet regions, and bilaterally into the levator scapulae and into the trapezius. Her gait was mildly antalgic. Dr. Balkman assessed Pedigo as having "cervical strain with facet arthrosis and muscle spasms." Tr. 241. Dr. Balkman prescribed a trial of Skelaxin (muscle relaxant) and ordered an MRI to assess the etiology of Pedigo's pain syndrome.

On June 3, 2005, at Dr. Balkman's request, Pedigo had an MRI of the cervical spine. Tr. 248. The MRI showed the following.

>FINDINGS: The cervical <u>alignment is normal</u>. There are <u>no compression fractures</u>. The <u>cervical cord is normal</u> with no evidence of syrinx and no evidence of Chiari malformation. There is desiccation of the cervical disc most prominent at C5-C6. There is <u>no significant disc space narrowing</u>. There is a <u>small</u> central disc extrusion at C5-C6. There is <u>minimal</u> disc bulging at C6-C7. There is <u>no evidence of stenosis of the spinal canal, and no significant foraminal narrowing</u>.

*Id.* (emphasis added).

On July 19, 2005, Karen Balkman, M.D., evaluated Pedigo for complaints of neck stiffness and pain. Tr. 249-250. Pedigo reported she was very sensitive to "most medications"

and "even a half of Skelaxin will knock her out." Tr. 249. Pedigo also reported she took Tylenol only "in the most guarded position" and had "maintained her previous function." *Id.* Pedigo had no other complaints. The physical examination indicated the following:

> **PHYSICAL EXAMINATION**:
> GENERAL: This is a well-developed, well-nourished, tall female.
> ROM (range of motion): The forward flexion or hyperextension only appear to exacerbate some of her symptoms.
> STRENGTH: No real pain into the arms and normal strength.
> CERVICAL SPINE: She has decrease of the normal cervical lordosis. There is muscle guarding, particularly over the C4-5, C5-6 paracervical region. Somewhat midline and over the facets.
> **IMPRESSION/PLAN**:
> 1. Cervical disc extrusion , C5-6.
> 2. Disc protrusion at C6-7.
> 3. Muscle spasms.
> 4. Symptoms of facet arthrosis on examination. As she did not feel the medical branch blocks had given her much relief, we will plan for a transforaminal injection at the C5-6 level to assess for decrease in the symptoms, which at this point have become a little more chronic. She will take the Tylenol prn. With the use of Skelaxin maybe a quarter of the tablet would be more reasonable.

Tr. 249-250.

On August 26, 2005, Dr. Balkman evaluated Pedigo. Tr. 251-252. Pedigo chief complaint was "neck pain and stiffness." Tr. 251. Dr. Balkman noted in part:

> **HISTORY OF PRESENT ILLNESS**: This is a 32 year-old, right hand dominant female who had a work related injury in 1985 when she slipped and fell on a wet floor. Over time, the pain has probably been the most problematic. Her MRI showed disc dessication at C5-6 and disc protrusion at C6-7 without significant stenosis. Though, she has had significant decrease lordosis and intermittently activation of lower back pain.
>
> As she comes in today, she has had muscle spasms in the lower back, mainly approximately at the area of the waist and across.
> **PRESENT MEDICATIONS**: Tylenol prn and Skelaxin (muscle relaxant) prn.
> **REVIEW OF SYSTEMS GENERAL**: As she describes, she takes a small amount of the Skelazin, maybe a fourth, only when it is needed. She describes that sitting is probably the worst for the back pain. If she stands for any period of time, this will also activate some of her symptoms. She has neural pain while supine.
> **PHYSICAL EXAMINATION**:
> GENERAL: This is a well developed, well nourished female.

> LUMBAR SPINE: Tenderness is primarily over the L4-5 paralumbar region with noted muscle guarding and muscle spasms.
> CERVICAL SPINE: She has some decreased cervical lordosis
> LUMBOSACRAL SPINE: The lumbosacral spine notes an exacerbation of lumbar lordosis.
> **PLAN**: The plans at this point, are to obtain x-rays of the lumbosacral spine to assess for degenerative disc disease based on her reported symptoms and clinical examination. In the meantime, we will complete trigger point injections over the L4-5 region bilaterally. She does have the upcoming procedure for treatment of the cervical disc disease.

Tr. 251-252**.**

On August 30, 2005, Pedigo had x-rays of her lumbar spine. Tr. 253. The x-rays results were "negative lumbar spine." *Id.*

On September 21, 2005, Dr. Balkman administered a cervical medial branch block over C4-C5, C5-C6, and C6-C7 on the right combined with a C5-C6 transforaminal injection on the right. Tr. 254.

## B. Credibility Determination

Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence. *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988). "Standard boilerplate language will not suffice." *Briggs ex rel. Briggs*, 248 F.3d 1235, 1239 (10th Cir. 2001).

Pedigo contends the ALJ failed to discuss the various medications prescribed by her treating physicians, failed to discuss the regularity of [her] doctor visits and failed to discuss the numerous but failed attempts of pain relief by "epidermal injections." Pl.'s Mem. in Support of Mot. to Reverse at 4.

In his decision, the ALJ found in pertinent part as follows:

> Upon careful consideration of the entire record, I find that Ms. Pedigo has a residual functional capacity compatible with the performance of at least 'light' work. In making this assessment, I considered all symptoms in accordance with the requirements of 20 C.F.R. §404.1529 and 416.929 and SSRs 96-4p and 96-7p. I also considered opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p and 96-6p. Ms. Pedigo has complained of neck pain but <u>cervical, thoracic, and lumbar x-rays have been normal</u> (Exhibits 1F, 3F, 18F). However, an MRI done in 2005 showed disc desiccation at C5-6 and small or mild protrusions at this level and C6-7 (Exhibit 15F). <u>Ms. Pedigo began seeing K. Balkman, M.D., who prescribed medication and provided injection therapy on two occasions</u>. Upon considering the evidence of record, I find that the claimant's medically determinable impairment could reasonably be expected to produce some of her alleged symptoms. However, her statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible. Ms. Pedigo testified that she relocated to the local area to care for her mother. She said that she could not lift ten pounds and could only sit or stand about ten to fifteen minutes. Ms. Pedigo stated that performing even a little house work induced severe pain which lasted up to two days. She testified that she could not stand long enough to do dishes.
>
> The objective findings in this case do not reasonably translate into the type of limitations Ms. Pedigo has characterized in her hearing testimony. <u>She has no medically determinable lower back problem which would affect her sitting or mobility</u>. <u>Her cervical conditions are relatively mild in nature and would not reasonable induce problems of disabling severity</u>. Her description of an impoverished lifestyle simply does not reconcile with the evidence as a whole. <u>I also note that Ms. Pedigo takes no prescription pain medication, has had little medical follow-up, and has not been referred to a surgeon</u>. As for the opinion evidence, Ms. Pedigo's chiropractor stated a belief that she could work in March 2003 and July 2004. Her lifting tolerance was estimated at 30 pounds. What appears to be another physician has reported that Ms. Pedigo has no walking, standing or sitting limitations (Exhibit 2F). Consultative examiner, S. Duritsch, M.D. has also reported no limits in Ms. Pedigo's ability to sit, stand, and walk. She was assessed with a lifting limitation of thirty pounds. Dr. Duritsch offered that she should not perform continuous lifting, handling, bending or twisting. However, his reference to carpal tunnel syndrome has not been verified by acceptable diagnostic techniques or medical treatment history (Exhibit 3F). Although Ms. Pedigo's cervical condition may make work at the higher exertional levels problematic, I find no substantive basis to conclude that she cannot perform at least "light" work. Specifically, she retains the ability to lift ten pounds frequently and twenty pounds occasionally, to sit, stand, and walk six cumulative hours per work day with normal breaks and meal periods; to push and pull with the strength limitations previously cited; to perform at least "occasional" postural activities; and has no limitations contradicting the performance of at least "frequent" manipulative actions. Ms. Pedigo has no communicative or environmental limitations. Accordingly, I find that Ms. Pedigo has a residual functional capacity compatible with the performance of "light" work.

Tr. 17-18 (emphasis added). Contrary to Pedigo's claims, the ALJ noted her visits to her doctors, the fact that she did not require prescription pain medication, and cited extensively to the medical

12

evidence to support his credibility determination. Accordingly, the Court finds that the ALJ's credibility findings are closely and affirmatively linked to substantial evidence and will not be disturbed.

## C.  ALJ's Evaluation of Pedigo's Pain

In evaluating a claim of disabling pain, the ALJ must consider (1) whether there is objective medical evidence of a pain producing impairment, (2) whether there is a loose nexus between this objective evidence and the pain, and (3) whether, in light of the evidence, both objective and subjective, the pain is in fact disabling. *Glass v. Shalala,* 43 F.3d at 1395 (citing *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987)).

Pedigo contends the ALJ ignored the chronic nature and severity of her pain. Pl.'s Mem. in Support of Mot. to Reverse at 2. Pedigo complains the ALJ relied on her activities to minimize her pain manifestations. The Court disagrees. As noted above, in evaluating Pedigo's pain, the ALJ set forth the objective medical evidence to support his finding. The ALJ also properly considered Pedigo's activities of daily living. *See Markham v. Califano*, 601 F.2d 533, 534 (10th Cir. 1979)("Ability to drive an automobile, participate in some community affairs, attend school, or to do some work on an intermittent basis does not necessarily establish that a person is able to engage in a 'substantial gainful activity,' but such activities may be considered by the [Commissioner], along with medical testimony, in determining the right of a claimant to disability payments under  the Act.").

Additionally, although the ALJ found Pedigo's "medically determinable impairment could reasonably be expected to produce some of her alleged symptoms," he found her symptoms were not as severe or debilitating as she claimed. Tr. 17. To support this finding, the ALJ cited to the

13

record which indicated normal x-rays of the cervical, thoracic and lumbar spine. *Id.* The record shows Pedigo had normal x-rays of the spine on June 8, 2001 (Tr. 155-157), on March 12, 2003, x-rays of the cervical and thoracic spine were normal (Tr. 167-168), on March 14, 2005, x-rays of the cervical and lumbar spine were normal (Tr. 239), and on August 30, 2005, x-rays of the lumbar spine were negative (Tr. 253). The ALJ also noted the June 3, 2005 MRI of the cervical spine. Tr. 248. The MRI showed normal cervical alignment, no compression fractures, and a normal cervical cord. *Id.* Moreover, although the MRI showed dessication (loss of water or degeneration) there was no significant disc space narrowing. The MRI also revealed "a **small** central disc extrusion at C5-C6" and a "**minimal** disc bulging at C6-C7." *Id.* However, there was no evidence of stenosis (narrowing) of the spinal canal and there was no significant foraminal narrowing. *Id.* Dr. Duritsch's musculoskeletal examination also revealed "no evidence of cervical, thoracic or lumbosacral radiculopathy or myelopathy (spinal cord symptoms)." Tr. 162. Dr. Balkman, a Pain and Spine Specialist, also evaluated Pedigo and noted her gait was nonantalgic, had full range of motion, and "a suggestion of tenderness and stiffness throughout the entire mid back and assessed Pedigo with "cervicothoracic lumbar strain with 'no clear etiology on the workup done thus far." Tr. 235.

The ALJ also noted that Pedigo did not require any pain medication and noted the two epidural steroid injections administered by Dr. Balkman. Significantly, Dr. Balkman, a Pain and Spine Specialist, never restricted Pedigo in any fashion. Upon careful consideration of the entire record, the Court finds that the ALJ's evaluation of Pedigo's pain complaints was proper and comports with the dictates of *Luna.*

**D. Failure to Develop the Record**

Pedigo also contends the ALJ failed to develop the record. Pl.'s Mem. in Support of Mot. to Reverse at 5. Plaintiff claims that on February 9, 2005, the date of the first administrative hearing, the ALJ informed her that her chiropractor had not ordered any x-rays thus the agency would probably send her for an orthopedic evaluation for a residual functional capacity evaluation. Tr. 291. Pedigo thus argues that "eight months later, and without further development, [the ALJ] makes a clear residual functional capacity finding of Plaintiff being able to do 'light work.'" Pl.'s Mem. in Support of Mot. to Reverse at 5. According to Plaintiff, "there is objective evidence of cervical spine problems which include limited range of motion suggesting muscle spasms," yet the ALJ failed to order a consultative examination. *Id*.

This argument is without merit. The Commissioner has broad latitude in ordering consultative examinations. *See Diaz v. Secretary of Health & Human Servs,* 898 F.2d 774, 778 (10th Cir. 1990). Nevertheless, it is clear that, where there is a direct conflict in the medical evidence requiring resolution, *see* 20 C.F.R. § 404.1519a(b)(4),[1] or where the medical evidence

---

[1] Section 404.1519a(b) states in pertinent part:

(b) Situations requiring a consultative examination. A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim. Other situations, including but not limited to the situations listed below, will normally require a consultative examination:

(1) The additional evidence needed is not contained in the records of your medical sources;

(2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;

(3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;

15

in the record is inconclusive, *see Thompson v. Sullivan*, 987 F.2d at 1491, a consultative examination is often required for proper resolution of a disability claim. Similarly, where additional tests are required to explain a diagnosis already contained in the record, resort to a consultative examination may be necessary.

The record indicates that after February 9, 2005, Dr. Balkman, a Pain and Spine Specialist, evaluated Pedigo. Tr. 232-234. Dr. Balkman ordered x-rays of the lumbar and cervical spine, and an EMG and nerve conduction study of the upper extremities. Tr. 234. The x-rays of the lumbar series and cervical spine were normal. The EMG and nerve conduction study confirmed Dr. Balkman's finding on physical examination that Pedigo experienced muscle spasms in the paraspinals. Tr. 242. Thereafter, Pedigo returned to see Dr. Balkman on April 8, 2005, April 27, 2005, May 20, 2005, June 3, 2005, July 19, 2005, August 6 and 30, 2005, and September 21, 2005. Moreover, on June 3, 2005, at Dr. Balkman's request, Pedigo had an MRI of the cervical spine. Based on all the evidence, the ALJ found that Pedigo's cervical condition "simply does not induce problems of disabling severity." Tr. 17. Substantial evidence supports this finding. Because Pedigo had been evaluated by a specialist and had the necessary work-up done, there was no need for a consultative examination. Moreover, there was no conflict in the medical evidence, the medical evidence was conclusive and there was no need to explain Pedigo's diagnosis.

---

(4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source; or

(5) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

**E.  Treating Physician Opinion in Determining RFC**

Generally, the ALJ must "give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).  "Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors  provided in [§] 404.1527.'"  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)(quoting Social Security Ruling 96-2p, 1996 WL 374188, at *4).  A treating physician's opinion is considered in relation to factors such as its consistency with other evidence, the length and nature of the treatment relationship, the frequency of examination, and the extent to which the opinion is supported by objective medical evidence.  20 C.F.R. § 404.1527(d) (1)-(6).  If the physician's opinion is "brief, conclusory and unsupported by medical evidence," that opinion may be rejected.  *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988). Moreover, a treating physician's opinion that a claimant is totally disabled is not dispositive "because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]."  *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).

Pedigo claims the ALJ erred when he relied on her chiropractor's opinion and the Commissioner's non-examining agency consultant to determine her RFC.  Pedigo also argues the ALJ erred in not affording Dr. Balkman's reports the proper weight.  Additionally, Pedigo contends the ALJ "totally dismissed Dr. Balkman's reports."  *Id.*

The Court disagrees.  The ALJ stated he considered "the entire record" in determining Pedigo's RFC (Tr. 17).  *Cf. Hackett v. Barnhart*, 395 F.3d 1168, 1173 ("[O]ur general practice . .

. is to take a lower tribunal at its work when it declares that it has considered a matter.").

Moreover, the ALJ set forth the evidence he relied upon, including Dr. Balkman's findings (negative cervical, thoracic, lumbar x-rays and MRI results, injection therapy on two occasions, no pain medication prescribed, no referral to a surgeon) in determining Pedigo's RFC. Tr. 17. Pedigo also complains that "the ALJ [did] not discuss the findings of Dr. Balkman as regards pain and stiffness to lower back" and "[did] not discuss the limited range of motion of the neck and cervical region." Pl.'s Mem. in Support of Mot. to Reverse at 6. However, an ALJ is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d at 1009-10. The Court has carefully reviewed Dr. Balkman's medical records. Contrary to Pedigo's contention that the ALJ discounted all of Dr. Balkman's findings, the ALJ properly considered the evidence.

Finally, Pedigo contends the ALJ had no basis for his RFC finding. In support of this argument Pedigo claims:

> When the ALJ first held a hearing on the matter, he conceded that the Plaintiff has no clearly determined residual functional capacity, to wit, " . . . to this Social Security doctor, but they didn't do any x-rays, and (inaudible) they're probably going to send you out for orthopedic evaluation, what's called a Functional Capacity Evaluation, what you can do, can't to . . . ." (Tr. 291). Then following the October 15, 2005 hearing, the ALJ finds that the Plaintiff has again the ability to perform light work (Tr. 19). All of this without a single simple evaluation which the ALJ conceded was lacking.
>
> This is simply unbelievable. Clearly the ALJ has no basis for such a find.

Pl.'s Mem. in Support of Mot. to Reverse at 7 (emphasis added). The Court is perplexed by Pedigo's argument. Pedigo made this argument in support of her failure to develop the record claim. For the same reasons the Court set forth in rejecting Pedigo's failure to develop the record claim, the Court rejects this claim. At the first hearing, the ALJ noted that Pedigo's chiropractor, did not order x-ray and mentioned the agency might send her for a consultative orthopedic

examination. However, Dr. Balkman performed an extensive evaluation and ordered x-rays and an MRI. This is exactly what the ALJ found lacking at the first administrative hearing. Because Pedigo had all the x-rays needed and had been evaluated by a Pain and Spine specialist, there was no need for a consultative evaluation. Thus, Pedigo's emphatic statement that the ALJ determined her RFC "without a single simple evaluation" is not supported by the record. Based on the record as a whole, the Court finds that substantial evidence supports the ALJ's RFC finding.

### F.  Conclusion

It is not this Court's role on appeal from this agency determination to reweigh the evidence or to substitute its judgment for that of the Commissioner. *See Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1994). The Court's role is to review the record to ensure that the ALJ's decision is supported by substantial evidence and that the law has been properly applied. After such review, the Court is satisfied that substantial evidence supports the ALJ's finding of nondisability. Accordingly, the ALJ's decision is affirmed.

A judgment in accordance with this Memorandum Opinion will be entered.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**